IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**KEVIN DICKINSON and TROY SHAW**,

    Plaintiffs,

v.                                                       **CIVIL NO. 06-0931 MCA/DJS**

**CANTEEN CORRECTIONAL SERVICES, INC.,
BOB CRAWFORD, GEORGE HEATH, HARRY
TIPTON, RON TORRES, FRANK VALDEZ, DOUG
ROBINSON, LARRY COOK, CORRECTIONAL
MEDICAL SERVICES, INC., and WILLIAM
SHANNON,**

    Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**[1]

    1. This matter is a civil rights action brought by a prisoners pursuant to 42 U.S.C. §1983. Initially filed *pro se* and *in forma pauperis*, Plaintiff Kevin Dickinson is now represented by counsel. Plaintiff Troy Shaw continues *pro se*. Plaintiffs Troy Shaw and Kevin Dickinson were incarcerated in the Bernalillo County Metropolitan Detention Center (BCMDC) at the time they filed their amended complaint. Plaintiffs bring various claims against the Defendants in this action, asserting violations of the Sherman Anti Trust Act, 15 U.S.C. §§1 *et seq.*, the Racketeering Act, 18 U.S.C. §§1961-68 *et seq.*, Federal Medicaid Laws and regulations, 42 U.S.C. §1396a, the Religious

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

Freedom Restoration Act, 42 U.S.C. §2000bb-1(b), the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §2000cc-1, The New Mexico Tort Claims Act, NMSA1978 §§41-4-1 *et seq.*, and the New Mexico Religious Freedom Restoration Act, NMSA 1978 §§28-22-1 *et seq.*. In addition, Plaintiffs seek relief pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985, alleging denial of their civil rights and violation of their rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the Constitution. Amended Complaint (Docket No. 8), p. 1.

2. Defendants Correctional Medical Services, Inc. and William Shannon ("Defendants") filed a motion for partial summary judgment as to Plaintiff Troy Shaw's claims against them on February 20, 2009 (Docket No. 218). Shaw sought an extension of time to respond to the motion, which was granted, but failed to file a response. These proposed findings address that motion for partial summary judgment.

3. Summary judgment is appropriate when there exists no genuine issue as to any material fact and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S. H. Kress & Co., 398 U. S. 144, 157 (1970). If the moving party meets its initial responsibility, the burden shifts to the opposing party to establish the existence of a material, factual dispute. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U. S. 574, 585-87 (1986). To establish the existence of a factual dispute, the opposing party may not rely upon the allegations or denials of his pleadings, rather, he is required to offer evidence in the form of affidavits or other admissible evidence demonstrating that a genuine issue of material fact remains for the fact finder to resolve. Fed. R. Civ. P. 56(e); Matsushita Elec., 475 U. S. at 596-87. In other words, a party opposing summary judgment "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof." Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir. 1996). Mere allegations, without more, are insufficient to avoid

summary judgment. <u>Lawmaster v. Ward</u>, 125 F.3d 1341, 1349 (10th Cir. 1997).

In determining whether summary judgment is appropriate, the Court will not weigh the evidence and determine the truth but rather determine whether there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." <u>Id.</u> at 255. However, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. <u>Id.</u> at 249-50.

4. D.N.M.LR-Civ. 7.1(b) states that failure to respond to a motion within the time prescribed for doing so constitutes consent to grant the motion. As noted previously, Plaintiff Shaw failed to respond to Defendants' motion. Nonetheless, the Tenth Circuit Court of Appeals has held that trial courts may not rely upon such local rules to grant judgment for a party, but rather must examine the merits of an unopposed summary judgment motion. <u>Reed v. Bennett</u>, 312 F.3d 1190, 1195 (10th Cir. 2002). "The district court must make the additional determination that judgment for the moving party is appropriate under Rule 56." <u>Id.</u> "By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion. The court should accept as true all material facts asserted and properly supported in the summary judgment motion." <u>Id.</u> With these standards in mind, the Court must examine Defendants' motion and assertions of material fact.

5. Plaintiff claims that Defendants were aware that the other named defendants in this action failed to provide him with the special diet required by his Crohn's Disease but failed to ensure that steps were taken to provide him with that diet. Plaintiff also claims Defendants discontinued certain prescriptions or stopped making those medicines available to him in retaliation for filing the instant action. In addition, Plaintiff claims Defendants falsified his medical records to indicate he received

medications that he did not, in fact, receive. Further, Plaintiff claims that Defendants failed to provide him with adequate medical treatment after he was assaulted on or about October 6, 2005.

6. The standard courts use to determine whether a prisoner's Eighth Amendment rights have been violated is "deliberate indifference". See Wilson v. Seiter, 501 U.S. 294, 297 (1994). This standard applies in non-emergency situations involving prisoners or when the state's responsibility to the prisoner does not clash with other equally important governmental responsibilities. See Whitley v. Albers, 475 U.S. 312, 320 (1986). One of the core concerns of the Eighth Amendment is inmate access to necessary medical care. See Ramos v. Lamm, 639 F.2d 559, 566 (10th Cir. 1980). In a §1983 action for damages, "only 'deliberate indifference to serious medical needs' of prisoners violates the Eighth Amendment proscription against cruel and unusual punishment." Id. at 574-575. A deliberate indifference to serious medical needs may be "manifested...[by] denying or delaying access to medical care....". Estelle v. Gamble, 429 U.S. 97, 104 (1976). Nonetheless, delay in medical care, by itself, does not support a constitutional claim. Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir.1993). Rather, such delay constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm. Sealock v. Colorado, 218 F.3d 1205, 1210-11 (10th Cir. 2000).

7. Petitioner began his medical care while incarcerated at BCMDC on September 15, 2005, with a medical intake screening. Defendant's Memorandum in Support of Motion for Summary Judgement (Docket No. 219) ("Defendants' Memorandum"), Exhibit B-1. On that document, he reported that he suffers from Crohn's disease. A health assessment was performed on Plaintiff seven day's later, where he requested medication for a diet tailored to his disease. Defendants' Memorandum, Exhibit B-2. Two days after that, in response to complaints of excess bowel movements, vomiting, and stomach cramps Plaintiff was prescribed Asacal, Phenergan, Darvocet,

a multivitamin and Prednisone to treat his Crohn's Disease. Defendants' Memorandum, Exhibit B-5. Plaintiff received various combinations of these medications from that date until his release from custody on April 3, 2007. Defendants' Memorandum, Exhibit B.

8. Plaintiff's first claims against these Defendants is that CMS and Dr. Shannon were aware that the other named Defendants failed to provide him with a diet consistent with his medical needs, but refused to take steps to ensure he would receive his medically necessary diet. Amended Complaint (Docket No. 8) ¶54,55. However, over the approximately nineteen months of the period of incarceration addressed in the amended complaint, Defendant Shannon or Dr. McMurray, another CMS doctor, put orders in for a special diet eight times. Defendants' Memorandum, Exhibits B-7, B-14, B-18, B-20, B-30, B-32, B-41 and B-60. On one occasion in that period, on February 22, 2006, Plaintiff requested that he be returned to a regular diet. Defendant's Memorandum, Exhibit B-21.

9. Plaintiff asserts that Defendant Shannon and other employees of Defendant CMS stopped prescribing comfort medications to him, explaining that the discontinuance was in retaliation for the filing of this suit. Amended Complaint, ¶56. However, the record reflects that prescriptions for Darvocet, Asacol, and Phenergan were regularly renewed under the orders of Doctors Shannon and McMurray as well as following consultations with outside doctors. On four separate occasions, Plaintiff refused medical care or failed to respond to an appointment. Defendants Memorandum, Exhibits B-9, B-33, B-53 and B-57.

10. Plaintiff Shaw asserts that on October 6, 2005, he was walking in the hallway when he was attacked by Defendant Valdez, a Metropolitan Detention Center guard, in retaliation for having filed grievances and the instant suit. Amended Complaint, ¶212. He further asserts that Defendant Valdez was fired that same day for the attack and that Defendants CMS and Shannon failed to

provide adequate medical treatment following the assault. Id. ¶¶213, 215. On that same date, at 1:50 p.m., Plaintiff refused medical treatment and signed a release of responsibility. Defendants' Memorandum, Exhibit B-9. When Plaintiff was next seen by a doctor, on November 23, 2005, he complained of a cough and nasal congestion which he had been suffering for two weeks. Defendants' Memorandum, Exhibit B-12.

11. In sum, the records provided by Defendants contradict Plaintiff's claims that he has not received treatment for his medical conditions or injuries. The records reflect that Plaintiff was seen dozens of times for medical and dental problems by doctors both in and outside the facility and regularly prescribed treatment and medication. However, Plaintiff also claims that Defendants falsified medical records to indicate he received medications he did not receive and stopped placement of his medications on the medication cart. Amended Complaint, ¶58. This claim is unsupported and cannot stand in the face of Defendants' Motion for Summary Judgment given Plaintiff's lack of response.

12. Plaintiff's allegations fall far short of demonstrating deliberate indifference to his medical needs. "'[D]eliberate indifference' is a stringent standard of fault." Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997). "A showing of simple or even heightened negligence will not suffice." Id. at 407. The record in this case does not show negligence in Plaintiff's care, let alone deliberate indifference, and Plaintiff's claims against Defendants Correctional Medical Services and Dr. Shannon regarding his medical care must be dismissed.

13. In addition to claiming that these Defendants provided him with inadequate medical care and failed to ensure he was provided with an adequate diet, Plaintiff Shaw alleges that they violated his right to free speech and to obtain redress of grievances without retaliation (Amended Complaint, p 24.), violated his right to necessary hygienic supplies, access to the courts, legal supplies and mail

(Amended Complaint, p. 12), and violated his religious and medical rights by denying adequate meals and engaging in price-gouging at the facility canteen (Amended Complaint, p. 10). Defendants assert that, as the contractor for medical services at the Metropolitan Detention Center and an employee of that contractor, they are not involved in providing any of these services and have no control over these areas of prisoner life at the facility. In support of this contention, they submit the affidavit of Henry Perea, Deputy Chief of Corrections at the Metropolitan Detention Center, which affirms that Defendants Correctional Medical Services and Shannon have no supervisory control over any area or department of the center other than the provision of medical services. Defendants Memorandum, Exhibit A.

    14. Personal participation is an essential element of a §1983 claim. Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir.1996). Further, supervisory liability must be based upon active unconstitutional behavior. Serna v. Colorado Dept. Of Corr., 455 F.3d 1146, (10th Cir. 2006). Plaintiff has not shown that Defendant Shannon has any personal participation in any of the alleged deprivations apart from those involving medical care. In addition, with respect to Defendant Correctional Medical Services, private entities acting under color of state law cannot be held liable pursuant §1983 under a theory of *respondeat superior*. Dubbs v. Head Start, Inc., 336 F.3d 1194, 1217 (10th Cir. 2003). In order to hold Defendant Correctional Medical Services liable, Plaintiff would have to show that it directly caused the alleged constitutional violations by instituting a policy of some nature that was the moving force behind the violations. Id. (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 480-85 (1986). Because he has not shown that Correctional Medical Services was involved in any of the non-medical deprivations he alleges, all of those other claims against them must also be dismissed.

**RECOMMENDED DISPOSITION**

That Defendants Correctional Medical Services, Inc. and William Shannon's Motion for Partial Summary Judgment as to Plaintiff Troy Shaw's claims against them (Docket No. 218) be granted and those claims dismissed with prejudice.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**