IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KEVIN DICKINSON and TROY SHAW,

      Plaintiffs,

v.                                        CIVIL NO. 06-0931 MCA/DJS

CANTEEN CORRECTIONAL SERVICES, INC.,
BOB CRAWFORD, GEORGE HEATH, HARRY
TIPTON, RON TORRES, FRANK VALDEZ, DOUG
ROBINSON, LARRY COOK, CORRECTIONAL
MEDICAL SERVICES, INC., and WILLIAM
SHANNON,

           Defendants.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

1.  This matter is a civil rights action brought by prisoners pursuant to 42 U.S.C. §1983.

Initially filed *pro se* and *in forma pauperis*, Plaintiff Kevin Dickinson is now represented by

counsel. Plaintiff Troy Shaw continues *pro se*. Plaintiffs Troy Shaw and Kevin Dickinson were

incarcerated in the Bernalillo County Metropolitan Detention Center (BCMDC) at the time they

filed their amended complaint. Plaintiffs bring various claims against the Defendants in this action,

asserting violations of the Sherman Anti Trust Act, 15 U.S.C. §§1 *et seq.*, the Racketeering Act, 18

U.S.C. §§1961-68 *et seq.*, Federal Medicaid Laws and regulations, 42 U.S.C. §1396a, the Religious

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommendations.  If no objections are filed, no appellate review will be allowed.

Freedom Restoration Act, 42 U.S.C. §2000bb-1(b), the Religious Land Use and Institutionalized

Persons Act of 2000, 42 U.S.C. §2000cc-1, The New Mexico Tort Claims Act, NMSA1978 §§41-4-

1 *et seq.*, and the New Mexico Religious Freedom Restoration Act, NMSA 1978 §§28-22-1 *et seq.*.

In addition, Plaintiffs seek relief pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985, alleging denial

of their civil rights and violation of their rights under the First, Fourth, Fifth, Sixth, Eighth, and

Fourteenth Amendments of the Constitution. Amended Complaint (Docket No. 8), p. 1.

      2. Defendants Correctional Medical Services, Inc. and William Shannon ("Defendants")

filed a motion for summary judgment on Plaintiff Dickinson's claims on March 4, 2009 (Docket No.

222). Because Plaintiff Dickinson's and Plaintiff Shaw's claims are unrelated except for the fact that

they each bring claims against various Defendants involved in running the facility in which they are

incarcerated, the Court has considered those claims separately. Accordingly, the instant findings and

proposed recommendation address only Defendants motion for summary judgment with respect to

Plaintiff Dickinson's claims. Through counsel, Dickinson responded to Defendants' Motion for

Summary Judgment on April 30, 2009 (Docket No. 242).

      3. Summary judgment is appropriate when there exists no genuine issue as to any material

fact and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c);

Adickes v. S. H. Kress & Co., 398 U. S. 144, 157 (1970). If the moving party meets its initial

responsibility, the burden shifts to the opposing party to establish the existence of a material, factual

dispute. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U. S. 574, 585-87 (1986). To

establish the existence of a factual dispute, the opposing party may not rely upon the allegations or

denials of his pleadings, rather, he is required to offer evidence in the form of affidavits or other

admissible evidence demonstrating that a genuine issue of material fact remains for the fact finder

to resolve. Fed. R. Civ. P. 56(e); Matsushita Elec., 475 U. S. at 596-87. In other words, a party

2

opposing summary judgment "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which [he or she] carries the burden of proof." Jenkins v. Wood, 81 F.3d 988, 990 (10th Cir. 1996). Mere allegations, without more, are insufficient to avoid summary judgment. Lawmaster v. Ward, 125 F.3d 1341, 1349 (10th Cir. 1997).

In determining whether summary judgment is appropriate, the Court will not weigh the evidence and determine the truth but rather determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255. However, if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted. Id. at 249-50.

4. Defendants submitted extensive exhibits to their motion for summary judgment and contend that Plaintiff's claims must be dismissed because he has failed to exhaust available administrative remedies, failed to show deliberate indifference to serious medical needs, and, for some claims, failed to show that they had any supervisory control or involvement in those aspect of the operation of the MDC. Plaintiff's response to the motion for summary judgment relies heavily upon his own affidavit. In ruling on motions for summary judgment, courts are directed to include in their consideration information set out in the nonmovant's affidavit if that information is "based on personal knowledge and set forth facts that would be admissible in evidence." Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir.1995). However, they should not consider "conclusory and self-serving affidavits." Id. The Court will view Plaintiff Dickinson's affidavit in light of that directive. Further, the Court notes that Plaintiff raises the fact that discovery has not been permitted in this case and asserts that discovery would allow him to support his claims. However, this response to the motion for summary judgment is not sufficient to meet the requirements of Fed.R.Civ.P. 56(f)

3

and preclude summary judgment on the basis of lack of discovery. <u>See</u> <u>Comm. for the First</u> <u>Amendment v. Campbell</u>, 962 F.2d 1517, 1522-23 (10th Cir.1992) (Unverified statements in attorney memoranda regarding the need for additional discovery insufficient for the purposes of Rule 56(f) ).

5. As an initial matter, review of the docket in this case reveals that Plaintiff Dickinson has been released from the MDC and subsequently obtained assistance of counsel. Plaintiff's release from the facility renders any of his claims for injunctive or declaratory relief regarding his conditions of confinement moot. <u>Green v. Branson</u>, 108 F.3d 1296, 1299-1300 (10th Cir.1997) (holding that release from prison moots claims for declaratory and injunctive relief). To the extent Plaintiff Dickinson seeks such relief against Defendants, those claims must be dismissed.

6. Plaintiff's first cause of action alleges that these Defendants, in addition to named Defendants Heath, Robinson, Tipton, and Torres violated his right to a "religious vegetarian diet sufficient to keep him in good health and comparable in quantity and quality to the meals received by other prisoners". Amended Complaint (Docket No. 8), p. 5. Plaintiff further asserts that he is an adherent to the Sikh faith and has been approved for a vegetarian diet by the MDC religious department but that the facility administration recognizes only Christianity. <u>Id.</u> at ¶¶ 27, 28. He further alleges that Defendants CMS and Shannon are aware of other Defendants' refusal to provide Plaintiff with vegetarian meals but refused to take corrective action, asserting that failure constitutes deliberate indifference to his serious medical need for nutrition. <u>Id.</u> at ¶42.

7. Defendants CMS and Shannon assert that, as the contractor for medical services at the Metropolitan Detention Center and an employee of that contractor, they are not involved in providing meals at the MDC and have no control over these areas of prisoner life at the facility. In support of this contention they submit the affidavit of Henry Perea, Deputy Chief of Corrections at

4

the Metropolitan Detention Center, which affirms that Defendants Correctional Medical Services and Shannon have no supervisory control over any area or department of the center other than the provision of medical services. Defendants Memorandum, Exhibit A.

8. Personal participation is an essential element of a §1983 claim. <u>Mitchell v. Maynard</u>, 80 F.3d 1433, 1441 (10th Cir.1996). Further, supervisory liability must be based upon active unconstitutional behavior. <u>Serna v. Colorado Dept. Of Corr.</u>, 455 F.3d 1146, (10th Cir. 2006). Plaintiff has not shown that Defendant Shannon has any personal participation in the alleged deprivation of a diet conforming to his religious beliefs. In addition, with respect to Defendant Correctional Medical Services, private entities acting under color of state law cannot be held liable pursuant §1983 under a theory of *respondeat superior*. <u>Dubbs v. Head Start, Inc.</u>, 336 F.3d 1194, 1217 (10th Cir. 2003). In order to hold Defendant Correctional Medical Services liable, Plaintiff would have to show that it directly caused the alleged constitutional violations by instituting a policy of some nature that was the moving force behind the violations. <u>Id.</u> (citing <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480-85 (1986). Because he has not shown that Correctional Medical Services or Dr. Shannon were involved in the non-medical deprivations he alleges, Plaintiff's first cause of action must be dismissed as against them.

9. Defendant's next cause of action is entitled "Third Cause of Action" in the Amended Complaint and alleges that Defendants Shannon and CMS, along with other named Defendants, violated his religious and medical rights. Amended Complaint (Docket No. 8), p. 10. That section generally complains that the meals at CMS are inadequate, causing him to lose muscle tone and gain unwanted body fat. No specific allegations are made against Defendants Shannon and CMS in this section of the complaint. This claim is subject to the same analysis and result as detailed in ¶8, *supra*, in that Plaintiff has not shown supervisory control or personal participation by Defendants

5

and it must therefore be dismissed against them.

10. As his "Fifth Cause of Action", Plaintiff asserts that Defendants, along with other named Defendants, violated his right to necessary hygiene supplies, access to the courts, mail, and to legal and personal correspondence supplies and postage. Amended Complaint (Docket No. 8), p. 12. Plaintiff contends that he is indigent and could not afford to pay for hygienic supplies or writing materials. Id. ¶ 92. He further asserts that the MDC does not provide washcloths, laundry detergent, lotion or cotton swabs and that, as a result of those lacks, he has been unable to adequately clean himself and has suffered from dry and itchy skin and unnecessary earwax blockage and earaches. Id. at ¶¶96, 97, 98, 99. Defendant further asserts that lack of adequate supplies has caused him to go weeks without brushing his teeth. Id. at ¶126. He contends that Defendant CMS has, by silence and inaction, permitted and encouraged these and other violations of his rights. Id. at ¶129. Once again, Plaintiff fails to provide evidence that these Defendants are responsible for the provision of hygiene materials at the MDC, that they set prices for supplementary materials, or that they have any involvement with MDC policies regarding postage and writing materials. Given that lack, summary judgment in favor of Defendants CMS and Shannon on the claims alleged as Plaintiff's Fifth Cause of Action is appropriate.

11. As his "Sixth Cause of Action" Plaintiff asserts that Defendants, along with other named Defendants, violated his right to necessary medical and psychological care and treatment as well as his right to access to the courts and to defend himself, *pro se,* from the charges levied against him. Amended Complaint (Docket No. 8), p. 16.   These Defendants were not involved in Plaintiff's access to the courts or the policies involved in that access so those claims must be dismissed. With respect to medical and psychological care, Plaintiff asserts that he suffers from arthritis, calcium deposits, bone spurs on his vertebrae and loss of bone density leading to back injury and pain. Id.

at ¶133. He also contends that he broke a finger on his right hand in 2004 and that Defendant Shannon ordered an x-ray of the injury, which was not taken for a month, resulting in the break not being set and Plaintiff losing use of the finger as well as suffering pain and mental anguish. Id. at ¶¶136-139. In addition, Plaintiff contends that Defendants often do not provide him with medical care if he is using the law library, requiring him to miss medical care and treatment including dispensation of scheduled doses of medications. Id. at ¶¶140-142. Plaintiff alleges that Defendants have charged him for medical care and treatment, the resulting expense causing him to forego treatment for colds, the flu, a back injury, infected cuts, skin infections, headaches, and other ailments. Id. at ¶¶142-144. He further contends that Defendants refused to test him for sexually transmitted diseases, hepatitis, or HIV/AIDS for a period of two years due to the expense of such tests and that he has been diagnosed with hepatitis C, for which they refused to provide treatment. Id. at ¶¶145-146.

12. The standard courts use to determine whether a prisoner's Eighth Amendment rights have been violated is "deliberate indifference". See Wilson v. Seiter, 501 U.S. 294, 297 (1994). This standard applies in non-emergency situations involving prisoners or when the state's responsibility to the prisoner does not clash with other equally important governmental responsibilities. See Whitley v. Albers, 475 U.S. 312, 320 (1986). One of the core concerns of the Eighth Amendment is inmate access to necessary medical care. See Ramos v. Lamm, 639 F.2d 559, 566 (10th Cir. 1980). In a §1983 action for damages, "only 'deliberate indifference to serious medical needs' of prisoners violates the Eighth Amendment proscription against cruel and unusual punishment." Id. at 574-575. A deliberate indifference to serious medical needs may be "manifested...[by] denying or delaying access to medical care....". Estelle v. Gamble, 429 U.S. 97, 104 (1976). Nonetheless, delay in medical care, by itself, does not support a constitutional claim. Olson v. Stotts, 9 F.3d 1475,

7

1477 (10th Cir.1993). Rather, such delay constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm. Sealock v. Colorado, 218 F.3d 1205, 1210-11 (10th Cir. 2000).

13. There are two parts to the Estelle standard. First, the prisoner must produce objective evidence that the medical need in question was in fact "serious." Second, the prisoner must produce subjective evidence of the prison official's culpable state of mind--that he was deliberately indifferent to the prisoner's medical needs. Id. at 106. "Deliberate indifference" in the Eighth Amendment context requires that the prison official "know[s] of and disregard[s] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "'[D]eliberate indifference' is a stringent standard of fault." Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997). "A showing of simple or even heightened negligence will not suffice." Id. at 407.

14. Beyond the foregoing claims of deliberate indifference to his medical needs, Plaintiff also contends that Defendants failed to properly treat his allergies and COPD (chronic obstructive pulmonary disease). Amended Complaint (Docket No. 8), ¶147-149. Plaintiff complains that they prescribed pseudophedrine to treat his allergies, which aggravated his COPD, and refused to prescribe an alternative medication due to the expense. Id. at ¶¶150, 152. With regard to this assertion, the Court notes that Plaintiff provided some medical records of his treatment by the Veteran's Administration hospital after his release. Plaintiff's Response (Docket No. 244) Exhibit C-1. Those records indicate a prescription for pseudophedrine, to be taken twice a day as needed for congestion. Id. This prescription indicates that, contrary to Plaintiff's unsupported assertion that pseudophedrine was inappropriate to treat his allergies, Defendants' prescription of the drug for him

8

was appropriate medical treatment. Further, Petitioner alleges that adequate doses of pseudophedrine, in conjunction with other medications, were used to treat his COPD before and after his incarceration. Plaintiff's Memorandum in Opposition to Summary Judgment (Docket No. 244) p. 14. In light of Plaintiff's conflicting assertions and the history of treating his COPD with pseudophedrine, his claims regarding the prescription of that drug fail to rise to the level of deliberate indifference to a serious medical need.

15. Plaintiff's allegations regarding the treatment of his COPD and other ailments fail to demonstrate deliberate indifference. Medical records provided by Defendants from MDC indicate that he was prescribed an Albuterol inhaler on August 14, 2004, one day after being incarcerated at the MDC. Defendants' Memorandum in Support of Summary Judgment (Docket No. 223), Exhibit B-3. After a further examination on September 9, 2004, Plaintiff was prescribed an Albuterol inhaler, Sudafed, Motrin, and nebulizer treatments with Albuterol. Id. Plaintiff was seen by medical staff on September 19, 2004, September 20, 2004, September 24, 2004, October 11, 2004, October 21, 2004, October 22, 2004, October 25, 2004, November 18, 2004, and November 29, 2004. In addition, he refused three medical appointments in December of that year. The remainder of Plaintiff's incarceration show similar frequencies of care as he made thirty-four visits to the wound-care clinic or various other medical providers in 2005 and missed several more medical appointments. Plaintiff was transferred from the MDC between February 2, 2006 and June 15, 2006. Id. Exhibit C. Nonetheless, he had at least twelve examinations or treatments by medical care providers and refused several more appointments. In 2007, Plaintiff had ten appointments with health care providers before his transfer from the MDC on April 18, 2007. He was continuously prescribed Albuterol inhalers, decongestants, and topical creams for skin infections or lesions. Plaintiff was diagnosed with HIV/AIDs and referred to outside care providers for counseling and

9

treatment of that condition.

16. Plaintiff asserts that Defendants have falsified medical records to receive medications he did not actually receive. Amended Complaint (Docket No. 8), ¶181. In his response to the motion for summary judgment, Plaintiff disputes the accuracy of a number of the medical records submitted by Defendants. He further asserts that legal papers, including his copies of grievances, came up missing after searches by jail guards or were stolen by other prisoners. Response to Motion for Summary Judgement (Docket No. 244) p. 10. However, apart from his unsupported assertions in his affidavit in opposition to the motion for summary judgement, Plaintiff offers no proof of these claims. Defendants' submitted the affidavit of Beverly McMurry, Director of Nursing for Defendant CMS at the Metropolitan Detention Center, attesting that the records attached to their Motion for Summary Judgment are true and correct copies of medical records created and kept in the regular course of business. Defendants' Memorandum in Support (Docket No. 223), Exhibit E. Plaintiff's self-serving affidavit, without other supporting evidence, is insufficient to successfully oppose summary judgment. Martinez v. U.S. Dept. Of Energy, 170 Fed.Appx. 517, 532 (10th Cir. 2006) (citing Salquero v. City of Clovis, 366 F.3d 1168, 1177 n. 4 (10th Cir.2004); Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1213 (10th Cir.2002); and Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir.1995)).

17. Plaintiff asserts that he is allergic to wool, that the blankets provided at MDC are wool and that those blankets and the fibers shed by them triggered his allergies and aggravate his COPD, but that Defendants CMS and Shannon refused to prescribe non-wool blankets for him. Amended Complaint (Docket No. 8), ¶¶ 155-160. In addition, Plaintiff contends that fibers from other prisoner's blankets irritated his allergies. Id. As with Plaintiff's COPD, review of the medical records reveals Plaintiff was regularly prescribed and administered various medications for his

allergies, including pseudophedrine. In addition, Defendants ordered he be provided cotton blankets for 90 days on February 6, 2007. Defendants Memorandum in Support (Docket No. 223) Exhibit B-80. Plaintiff further asserts that he has not been prescribed ibuprofen or muscle relaxants and that the failure to treat his back pain has resulted in unnecessary pain and mental anguish. Id. at ¶164-165. Once again, that assertion is belied by medical records reflecting regular prescriptions for ibuprofen and periodic prescriptions for other pain relievers. Plaintiff also contends that he requires a back brace and cane, that Defendants ordered him a cane in 2005 but never delivered it and did not provide him with a back brace until September 12, 2006. Id. at ¶¶160-163. These allegations do not rise to the level of a constitutional claim. See Sealock v. Colorado, 218 F.3d 1205, 1210-11 (10th Cir. 2000) (holding that "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm"). Delay in medical care, by itself, does not support a constitutional claim. Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir.1993).

18. Plaintiff contends that the CMS nurses who operate "sick calls" insist on charging him to renew prescriptions and only infrequently provide services, resulting in his prescriptions expiring or him being denied treatment. Plaintiff specifically asserts that in November, 2004 a nurse charged him seven dollars but provided no treatment or care and refused to refer him to a doctor after he complained to her of back pain, resulting in his lying on the floor in the common area of his cellblock, unable to move, for several hours. Plaintiff alleges that he remained bed-ridden for several weeks following this event without medication. Amended Complaint (Docket No. 8) at ¶¶170-172. A medical encounter form indicates that Plaintiff was left on the floor on November 29, 2004 after he threatened the paramedic, who noted Plaintiff would be seen the following morning. Defendants' Memorandum (Docket No. 223), Exhibit B-15. Plaintiff apparently requested transport to the

11

hospital when the paramedic arrived and then threatened to stab someone when transport was not offered. Id., Exhibit B-15.  Once again, this allegation fails to rise to the level of a constitutional claim, as he was not denied care and makes no showing of substantial harm from the delay he engendered by threatening violence. Contrary to his assertion he was bedridden for several weeks, Plaintiff was in court a week later, causing him to miss a medical appointment, and declined a clinic appointment in order to spend time in the law library roughly two weeks after the November incident. Defendants' Memorandum in Support (Docket No. 223), Exhibits B-16, B-17.

19. Plaintiff alleges that he suffers from Attention Deficit Disorder (ADHD), which was treated with Ritalin prior to his confinement but which Defendants refused to treat. Plaintiff contends that Defendants' refusal to treat his ADHD resulted in him suffering mental anguish and caused him difficulties in preparing his criminal defense and in litigating civil actions. Amended Complaint (Docket No. 8) at ¶¶170-174. Plaintiff asserts that he was found incompetent to stand trial in October, 2005 and was thereby unable to defend himself *pro se* and deprived of a speedy trial for over a year as a result of his untreated ADHD. Id. at 175-176. Defendants' refusal to prescribe Ritalin or other medication for Plaintiffs ADHD constitutes a disagreement as to the appropriate course of medical treatment, rather than a denial of care. He does not assert that Defendants were unaware of his claims of ADHD or that they did not see him about that malady, but rather that they did not treat it with Ritalin. This constitutes a disagreement regarding the course of treatment rather than a constitutionally cognizable claim for deliberate indifference. Further, Plaintiff has not established that untreated ADHD represents a serious medical need. See Desroche v. Strain, 507 F.Supp.2d 571, 583 (E.D.La. 2007) (holding ADHD does not reach the level of a serious medical condition); Baylis v. Taylor, 475 F.Supp.2d 484, 486-87, 489 (D.Del. 2007) (Holding that termination of prescription of Ritalin to treat attention deficit disorder because the facility did not

12

recognize that disorder constituted a disagreement over proper treatment rather than deliberate indifference to a serious medical need).

20. Plaintiff contends that Defendants have failed to provide adequate treatment for sores and rashes which have appeared all over his body as a result of skin disorders he has suffered. Amended Complaint (Docket no. 8) at 177-178. Plaintiff alleges that the failure to treat those disorders not only caused him pain but also resulted in nerve damage to the top of his feet. Id. at ¶178. Plaintiff's medical intake form reflected that he entered MDC with these disorders and was immediately prescribed antibiotics. Defendants' Memorandum in Support (Docket No. 223), Exhibit B-2. The conditions persisted when he returned to MDC on June 15, 2006 after a four month absence. Id. , Exhibit B- 52.  At various times, Plaintiff was prescribed Hydrocortisone and Bacitracin ointment for his rashes as well as antibiotics. Although Plaintiff's skin disorders persisted, he received regular treatment for them and cannot show that Defendants were deliberately indifferent to this medical need.

21. Plaintiff's "Seventh Cause of Action" alleges that Defendants CMS and Shannon, along with other named Defendants, violated his right to exercise his religious beliefs without retaliation, to be free of excessive force, and to medical care. Amended Complaint (Docket No. 8), p. 21. This cause of action centers around an altercation with guards on July 7, 2005 which Plaintiff alleges was precipitated by him being provided with a non-vegetarian meal. Plaintiff asserts that he was sprayed with pepper spray by jail guards but denied medical care. Id. ¶¶ 192, 193, 196, 197. As discussed in these findings at ¶7 and ¶8, *supra*, Defendants CMS and Shannon are entitled to summary judgment with respect to Plaintiff's claims alleging use of excessive force and violation of his right to free exercise of religion, as well as claims regarding provision of his food. With respect to his claim that he was denied medical care after being sprayed with pepper spray, Plaintiff asserts that

13

the spray exacerbated his COPD. However, he was regularly treated for COPD and failed to report aggravation of that condition on August 2, 2005 when he was seen for complaints of skin problems, asthma, and chronic lower back pain. Defendants' Memorandum in Support (Docket No. 223), Exhibit B-27. On August 31, 2005, Plaintiff was seen in the Respiratory Chronic Clinic, diagnosed with asthma and allergic rhinitis, and prescribed Sudafed, Albuterol and Flovent. Id., Exhibit B-36. Under the circumstance presented here, Plaintiff's claim that his untreated exposure to pepper spray resulted in a serious medical need actionable under an Eighth Amendment standard.

22. Defendants assert that Plaintiff failed to exhaust his administrative remedies. Plaintiff contends that he attempted to exhaust his remedies or that exhaustion was futile, as his grievances were discarded or never received a response. In support of their claim of failure of exhaustion, Defendants provide the affidavit of Roseanna Archuleta, a classification specialist serving as a grievance officer at the MDC, who attests that Plaintiff did not appeal any of the grievances he filed in regard to the provision of medical care while incarcerated there.  Defendants' Memorandum in Support (Docket No. 223), Exhibit F. Ms. Archuleta further attests that appeal of a grievance is required to exhaust that remedy. Id. Defendants also provided a copy of the MDC policy regarding inmate grievances, which describes the appeal process, which must be initiated by the inmate. Id. Exhibit I.

23. An inmate must exhaust administrative remedies in order to bring a claim for relief pursuant to §1983. 42 U.S.C. 1997(e)(a). Failure to exhaust is an affirmative defense upon which the Defendants bear the burden of proof. Jones v. Bock, 549 U.S. 199, 215-16 (2007). Defendants have met that initial burden. In order to exhaust remedies, inmates must properly complete the grievance process and correct deficiencies. See Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir.2002). Proper exhaustion requires compliance with all the steps of a prison's grievance

14

procedure. See Woodford v. Ngo, 548 U.S. 81, 90 (2006). The argument that prison officials have interfered with grievances in various ways "is akin to an argument that prison officials should be equitably estopped from relying upon the exhaustion defense." Jernigan, 304 F.3d at 1033. If prison officials prevent a prisoner from proceeding with exhaustion of administrative remedies they render that remedy unavailable such that a court will deem the procedure exhausted. See Lyon v. Vande Krol, 305 F.3d 806, 808 (8th Cir.2002) (en banc)(cited in Baughman v. Harless, 142 Fed. Appx. 354, 359 (10th Cir. 2005)(unpublished disposition)). Nonetheless, to demonstrate exhaustion Plaintiff must concisely state how he has fulfilled the exhaustion requirement by attaching a copy of the administrative proceedings or describing with specificity the administrative proceeding and its outcome. See Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1209-10 (10th Cir.2003)(abrogated on other grounds by Jones, 549 U.S. at 215-16).

24. Plaintiff submitted copies of various grievances and appeals of grievances, including an appeal made on February 23, 2005 regarding Plaintiff's broken finger; an appeal made on November 27, 2004 also regarding his finger; a grievance form from September 30, 2006 indicating that Plaintiff wished to appeal the response to the grievance regarding supplies of soap and other hygiene supplies; a grievance regarding medical issues dated December 6, 2005 on which Plaintiff indicated he wished to appeal the response; a grievance regarding medical issues dated December 4, 2006 on which Plaintiff indicated he wished to appeal the response; a grievance dated January 5, 2007 regarding the amount of cheese served in the vegetarian meals on which Plaintiff indicated that he wished to appeal; a grievance dated January 9, 2007 regarding medical care and noting other grievances on which Plaintiff indicated he wished to appeal the response; an appeal dated January 25, 2007 regarding medical care and response to grievances; an appeal form dated February 7, 2007 regarding lack of response to grievances; a grievance dated March 9, 2007 regarding provision of

Plaintiff's inhaler and other medicines on which Plaintiff indicated he wished to appeal the response; and a grievance dated March 13, 2007 regarding provision of medications on which Plaintiff indicated he wished to appeal. Plaintiff's Exhibit B to his Response to Motion for Summary Judgment (filed as Docket No. 245). In addition, Plaintiff submitted other grievance forms not noted as received by staff or not legible. Id.

25. Given Plaintiff's provision of specific documents indicating appeals of grievances or a desire to appeal the response to grievances and Defendant's failure to support their motion for summary judgment with anything except a general affidavit asserting no appeals were filed, a genuine issue of material fact exists with respect to the issue of exhaustion and Defendants are not entitled to summary judgment on this ground. Defendants are still entitled to summary judgment in their favor on all of Plaintiff's constitutional claims against them as described above, either because he has not shown that they have been deliberately indifferent to serious medical needs or because Defendants have not been involved with or in control of the other aspects of Plaintiff's incarceration.

26. Defendants construe Plaintiff's amended complaint as asserting a claim under New Mexico law for medical negligence. They assert that they are entitled to summary judgment on this claim and attach the affidavit of an expert witness, Gary Vilke, M.D., opining that Plaintiff's medical records from the MDC show the skill and care ordinarily used by reasonably well qualified health care providers practicing under similar circumstances. As this case was instituted by prisoner plaintiffs appearing *pro se*, no discovery or opportunity to develop expert testimony or provide expert reports pursuant to Fed.R.Civ.P. 26 has been provided. "[T]he pre-trial dismissal of all federal law claims, leaving only a state law claim, generally prevents a district court from reviewing the merits of the state law claim." McWilliams v. Jefferson County, 463 F.3d 1113, 1117 (10th Cir.2006); 28 U.S.C. § 1367(c)(3); see also Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350

n. 7 (1988) ("In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims."). Given that Plaintiff is now represented by counsel and that all federal claims against these Defendants should be dismissed, this Court should decline to exercise jurisdiction over this claim and dismiss it without prejudice.

**RECOMMENDED DISPOSITION**

That Defendants Correctional Medical Services, Inc. and William Shannon's Motion for Summary Judgment on Plaintiff Dickinson's Claims on March 4, 2009 (Docket No. 222) be granted in part; that Plaintiff Dickinson's federal claims against Defendants Correctional Medical Services, Inc. and William Shannon be dismissed with prejudice and that Plaintiff Dickinson's state law claim for negligence be dismissed without prejudice.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**

17